**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAKE CHARLES DIVISION**

| | |
|---|---|
| **BRANDON DWAYNE THOMAS** | **CASE NO. 2:24-CV-00791** |
| **VERSUS** | **JUDGE JAMES D. CAIN, JR.** |
| **D G LOUISIANA L L C** | **MAGISTRATE JUDGE LEBLANC** |

# MEMORANDUM ORDER

Before the court is a *Daubert* Motion and Motion in Limine [doc. 30] filed by defendant DG Louisiana, LLC, and seeking to exclude or limit the testimony of plaintiff's treating physician and life care planning expert. Plaintiff opposes the motions. Doc. 34.

## I. BACKGROUND

This suit arises from a slip and fall at a Dollar General store in Iowa, Louisiana, on December 5, 2023. Doc. 1, att. 2. Plaintiff alleges that he was shopping in the store on that date and slipped on cleaning solution on the floor of an aisle, where an employee had recently been mopping but had failed to put out a wet floor sign. *Id.* He filed suit against defendant in state court, raising claims of negligence. *Id.* Defendant removed the matter to this court on the basis of diversity jurisdiction, 28 U.S.C. § 1332. Doc. 1. The case is set for jury trial before the undersigned on September 21, 2026.

Defendant now moves to exclude or limit the testimony of plaintiff's treating physician, Dr. Gassan Chaiban, and life care planning expert, Dr. Michael Hunter, under the standards set forth in Federal Rule of Evidence 702 and *Daubert v. Merrell Dow*

*Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). Doc. 30. Specifically, defendant argues that these individuals lack a reliable basis for forecasting a lifetime of future medical care for defendant, who is still working without restriction and takes only over-the-counter medication. *Id.* It also maintains that Dr. Hunter's testimony should be limited to the scope of life care planning rather than his opinions as a physician. Plaintiff opposes the motion. Doc. 34.

## II.
## LAW & APPLICATION

### A. Governing Law

The trial court serves as gatekeeper in determining the admissibility of expert testimony, by making an initial determination of whether the expert's opinion is relevant and reliable. *See Daubert*, 509 U.S. at 589. This gatekeeping function extends to all expert testimony, whether scientific or not. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999). Accordingly, Federal Rule of Evidence 702 provides that the court must consider the following three requirements on challenges to experts: 1) qualifications of the expert witness; 2) relevance of the proposed testimony; and 3) reliability of the principles and methodology on which the testimony is based.[1] The proponent of the expert testimony bears the burden of proving its admissibility, by a preponderance of the evidence. *Mathis v. Exxon Corp.*, 302 F.3d 448, 459–60 (5th Cir. 2002).

---

[1] The *Daubert* Court identified several additional factors for assessing whether the expert's methodology is valid and reliable, including whether the expert's theory had been tested and subjected to peer review, the known or potential error rate for the expert's theory or technique, the existence and maintenance of standards and controls, and the degree to which the technique or theory has been generally accepted in the scientific community. *Moore v. Ashland Chemical, Inc.*, 151 F.3d 269, 275 (5th Cir. 1998). However, the same standards cannot be applied to all possible fields of expertise. Accordingly, the *Daubert* analysis is necessarily flexible and fact-specific. *Kumho*, 526 U.S. at 150.

The trial court has broad latitude in determining the admissibility of expert testimony. *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004). Rejection of expert testimony is the exception rather than the rule, and the court's role as gatekeeper "does not replace the traditional adversary system and the place of the jury within the system." *Johnson v. Samsung Electronics Am., Inc.*, 277 F.R.D. 161, 165 (E.D. La. 2011); *Scordill v. Louisville Ladder Grp., LLC*, 2003 WL 22427981, at *3 (E.D. La. Oct. 24, 2003). Instead, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Scordill*, 2003 WL 22427981 at *3 (quoting *Daubert*, 509 U.S. at 596).

**B. Application**

Plaintiff, who is about 43 years old, worked as a groundskeeper at Combre Memorial Park at the time of the accident. Doc. 30, att. 3, pp. 17–18. He currently works for Doug Ashy Lumber Company, loading vehicles. *Id.* at 15. Following the accident he received chiropractic care for his back and neck and then sought treatment from Dr. Chaiban in April 2025. Doc. 30, att. 5, p. 1. At that time he complained of headaches, back and neck pain, spasms in his right leg, and an inability to fully extend his right arm. *Id.* An MRI of his cervical spine showed Modic Type I changes at C4–5/C5–6, multilevel disc disease/facet arthropathy, mild canal stenosis C2–T1, and neuroforaminal narrowing. Doc. 30, att. 6, p. 6. His lumbar spine also showed multilevel disc disease and facet arthropathy, while his shoulder MRI showed low-grade partial thickness infraspinatus and upper subscapularis tear, a labral tear, bone marrow edema in the distal clavicle and acromion,

post-traumatic linear signal in the acromion, moderate AC joint arthritis, and a subacromial enthesophyte. *Id.*

On May 8, 2025, plaintiff underwent a lumbar epidural spinal injection ("LESI") with Dr. Chaiban. Doc. 30, att. 6, p. 5. Afterward he reported 100 percent relief of his back and radicular symptoms. *Id.* On May 11, 2026, he underwent a bilateral C3–4 and C4–5 radiofrequency ablation ("RFA"). Doc. 30, att. 5, p. 2. He reported >80 percent improvement in pain severity and frequency. *Id.* At his last visit, in June 2026, he did not complain of shoulder pain. *Id.* at 11. He is currently only taking over-the-counter medications because he did not receive any relief from prescription muscle relaxers. *Id.* at 14–15.

Dr. Chaiban recommended a lifetime of future treatment for plaintiff, including annual RFAs, LESIs two to four times per year, MRIs of his shoulder and lumbar and cervical spine every five years, four to ten pain management follow-up visits per year, and twelve sessions of physical therapy per year. Doc. 30, att. 6, pp. 7–8. Dr. Hunter, the life care planner, adopted these treatment recommendations and priced out plaintiff's future care for a life expectancy of 36 more years. *Id.* at 9–10. He calculated an annual cost of $24,920.92 to $38,693.23 and a total cost of $897,153.12 to $1,392,956.16. *Id.* at 11.

Defendant seeks to limit or exclude their testimony, arguing that these treatment recommendations are unfounded. In particular, defendant notes that plaintiff has continued to work at heavy manual labor and takes only over-the-counter medication to manage his pain. Defendant also points to the lack of foundation for Dr. Chaiban's recommendation of lifetime treatment, noting that Dr. Chaiban himself testified that there was no way to predict

how long repeated RFAs and LESIs would be effective. Doc. 30, att. 3, pp. 46–47. Finally, defendant argues that Dr. Hunter (a board-certified physician in pain medicine and anesthesiology) should be limited to offering opinion testimony as a life care planner because he did not treat plaintiff or provide a report disclosing opinions beyond the scope of his life care plan.

Dr. Chaiban has supported his treatment recommendations with more than speculation. As to the recommendation for shoulder MRIs despite a lack of recent complaints, he explained that facet-mediated pain symptoms could refer to the shoulder. Doc. 30, att. 4, p. 20. He also provided medical reasoning for his treatment recommendations. *Id.* at 24–27, 37–47. Numerous courts have recently admitted testimony that lifetime RFAs are a reasonable course of treatment. *E.g.*, *Miles v. Minor*, 2021 WL 3042687, at *4 (E.D. La. June 16, 2021); *Salgado v. Electric Ins. Co.*, 2020 WL 6370992 (M.D. La. Oct. 29, 2020); *Eastman v. State Farm Mutual Automobile Ins. Co.*, 368 So.3d 77 (La. Ct. App. 3d Cir. 2023). A plaintiff need only establish his entitlement to medical expenses that are "more probable than not" rather than "necessary and inevitable." *Salgado*, 2020 WL 6370992 at *7. Plaintiff's treating physician provides a sufficient rationale to pass *Daubert*'s standards of admissibility and the jury may determine, in consideration of this testimony along with everything else admitted at trial, whether plaintiff has met his burden as to the future medical expenses claimed.

As for Dr. Hunter, life care planners are allowed to "testify as to future healthcare needs, predicated upon the testimony of treating physicians as to the reasonable need for such care, and the cost of such care." *Snider v. New Hampshire Ins. Co.*, 2016 WL 3193473,

at *2 (E.D. La. Jun. 9, 2016). Plaintiff disclosed Dr. Hunter's qualifications as a board-certified physician and his intent to offer opinions on plaintiff's future medical needs. *See* doc. 34, p. 19. Further, Dr. Hunter adopted Dr. Chaiban's treatment recommendations in the life care plan after a consultation and full review of the medical record. Doc. 30, att. 6. And, as plaintiff notes, Dr. Hunter has evaluation and treatment experience with the future care recommended by Dr. Chaiban. Accordingly, his life care plan and disclosures provide sufficient notice of his opinion testimony on plaintiff's future medical needs. There is no basis for limiting his testimony.

## III.
## CONCLUSION

For the reasons stated above, **IT IS ORDERED** that defendant's Motion in Limine and *Daubert* Motion [doc. 30] be **DENIED**.

**THUS DONE AND SIGNED** in Chambers on the 5th day of August, 2026.

**JAMES D. CAIN, JR.**
**UNITED STATES DISTRICT JUDGE**